Roderick Motley
2313 1/2 South Spaulding
Los Angeles, CA 90016
Phone Number (323) 743-0594
Plaintiff In Pro Per

FILED
CLERK, U.S. DISTRICT COURT

JUN 23 2016

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

Roderick Motley, and individual

    Plaintiff,

        vs.
City Civil Service Commission oF the City oF Los Angeles, **Department of Water and Power,** City oF Los Angeles,

CV 16 - 04572 - MWF (JCx)

Case No.:

**Complaint for: (1) Breach of Duty of Fair Representation (The Labor Management Relations Act; 29 U.S.C. § 185, et seq.); and (2) Breach of Collective Bargaining Agreement (The Labor Management Relations Act; 29 U.S.C. § 185, et seq.). (3) Fraud**

" Demand Jury Trial "

LOCAL 18 of the International Brotherhood of Electrical Workers, an unincorporated organization; and Does 1 through 100, inclusive, Defendants.

        Defendant(s)

Complaint- RODERICK MOTLEY

## SUMMARY OF THE CASE

1. Plaintiffs Roderick Motley "Plaintiff" bring this action against the following Defendants CITY OF LOS ANGELES, acting by and through the Department of Water and Power, and Does 1 through 10, inclusive, Defendants. (s), AND, LOCAL 18 of the International Brotherhood of Electrical Workers, an unincorporated organization; and Does 1 through 100, inclusive, Defendants. (collectively, the "Defendants").

2. This is an action brought to remedy the Defendants' breach of collective bargaining agreement and breach of their duties of representation of Plaintiffs, all in violation of the Labor Management Relations Act. And fraud.

3. This civil action seeks compensatory and punitive damages against all Defendants, for violations of Plaintiff's rights as set forth herein.

4. This civil action also seeks injunctive relief, as set forth herein.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction of these claims under section 301(a) of the Labor Management Relations Act of 1947, 39 U.S.C. § 185(a), providing for jurisdiction over claims arising from violations of collective bargaining agreements, under sections 1331 and 1337 of the Judicial Code (28 U.S.C. §§ 1331, 1337) as this case arises under federal laws regulating interstate commerce. Jurisdiction is specifically conferred on this Court by 29 U.S.C. § 185(c).

7. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391 (b), § 1391(c), and § 1392 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district and some or all of the defendants reside within this judicial district. Venue is also appropriate under 29 U.S.C. § 185(c), as Defendants have principal offices in this judicial district and are engaged in representing member longshoremen within this judicial district.

8. Plaintiffs have fully complied with all prerequisites to jurisdiction in this Court, including exhaustion of administrative remedies under the Labor Management Relations Act.

### THE PLAINTIFFS

9. Plaintiff Roderick Motley is, and at all times mentioned herein, an individual who resides in the State of California.

### THE DEFENDANTS

10. Plaintiffs are informed and believe, and on that basis allege, that CITY OF LOS ANGELES, acting by and through the Department of Water and Power, and Does 1 through 10, inclusive, Defendants. (s),

("DWP") and LOCAL 18 of the International Brotherhood of Electrical Workers, an unincorporated organization; and Does 1 through 100, inclusive, Defendants.

is, and at all times mentioned herein was, a California corporation with offices located in Los Angeles, California. Defendant LOCAL 18 is a bargaining agency with respect to rates of pay, wages, hours, terms and conditions of employment.

11. Plaintiffs are informed and believe, and on that basis allege, that Defendant is an unincorporated organization representing, among others, employees in an industry which is engaged in trade, commerce, transportation, and transmission among the several states and with foreign nations, and with executive offices located at _700 East Temple Street_ Los Angeles California. Local 18 is the bargaining representative for **local** unions in California22. Plaintiffs are informed and believe, and on that basis allege, that Defendant International Longshoremen's And Warehousemen's Union, **Local** 13 ("**Local** 13") is, and at all times mentioned herein was, an unincorporated organization representing, among others, employees in an industry which is engaged in trade, commerce, transportation, and transmission among the several states and with foreign nations, and with offices located in Wilmington, California.

23. Plaintiffs do not know the true names or capacities of the Defendants sued herein under the fictitious names Does 1 through 10, inclusive. Plaintiff will amend this Complaint to state their true names and capacities when ascertained. Plaintiffs are informed and believe, and on that basis allege, that Does 1 through 10 have knowledge and/or notice of the conduct, transactions and/or occurrences that form the basis of Plaintiff's allegations herein.

**FACTUAL ALLEGATIONS**

24. Plaintiffs was at the time an employee for Department of water and power working in the Los Angeles California

*VIOLATION OF RIGHTS BY CITY OF LOS ANGELES, acting by and through the Department of Water and Power, and Does 1 through 10, inclusive, Defendants. (s), AND, LOCAL 18 of the International Brotherhood of Electrical Workers, an unincorporated organization; and Does 1 through 100, inclusive, Defendants.*

Plaintiff, Roderick Motley was employed for 15 years DWP.

25 On April 25, 2012, defendants violated Plaintiff due process Rights by Violating Skelly Due Process rights by Failing to pay plaintiff during disciplinary proceeding before and after.

26 Approx 4 25 2012, defendants violated plaintiff due process rights' life liberty and property by discharging without a hearing and fair representation, and violation of preliminary actions for reason of discharge, and failed to give copy of charges.

defendants Failed to give copy of charges and material facts for discharge.

Complaint- RODERICK MOTLEY

## Introduction

27 Roderick Motley, plaintiff was discharged 4/25/2012 from City of Los Angeles Department of Water and Power for alleged violation of DWP Policy Rule E "Reporting for duty unfit for work to the use of drug and Alcohol. Defendants Violated Skelly by failing to pay plaintiff

28 until final alleged hearing 8/1/2012 9/14/2012 and 10/15/2012. Defendants terminated plaintiff before hearing Violation on Skelly due process. Defendants submitted false evidence of plaintiff work assignments stating he was a driver and required random testing. Defendants was in violation to give

29 plaintiff DOT drug testing on 10/4/11. Defendants allege plaintiff had 3 Failed test. But defendants failed to state the medical examiner said test each test was flawed. Defendants failed to test based on reassignment which does not include drug test. The drug test did not come under regulation for non driving

30 LADWP - medical experts all agreed that marijuana test was flawed management abused Authority, Algoni Lucero testified that in December 2000 he observed plaintiff off duty while plaintiff was on vacation under the influence Mark Goiven was not a medical examiner to make the

31 determination, and has No authority over plaintiff off duty. Mark Lucero believed Algoni Heresay statement and filed a complaint against plaintiff that was fraud and incompleted be cause plaintiff was off duty on vacation when allegations occured LADWP abused power, fraud medical exam fraud

32 disciplinary proceedings Violation of Skelly Defendants failed to provide testimonies and evidence to discharge plaintiff. Defendants denied representation plaintiff has Triable issues of fraud, breach and denied of Representation and breach of collective bargaining.

Complaint- RODERICK MOTLEY

*FIRST CLAIM FOR RELIEF*

**(Breach Of Duty Of Fair Representation)**

**(The Labor Management Relations Act; 29 U.S.C. § 185, *et seq.*)**

**By Plaintiffs Against The Union Defendants**

33. The allegations set forth in paragraphs 1 through 57 are incorporated herein by reference.

34. At all material times herein, the Union Defendants owed Plaintiffs a duty of fair representation. The duty of fair representation requires a union to serve its members' interests without hostility or discrimination towards any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct. This duty prohibits bad faith or discriminatory treatment of members by their union. The duty to refrain from arbitrary conduct further prohibits actions by the union so far outside a wide range or reasonableness as to be irrational.

35. By the acts alleged herein, the **DWP and Local 18** breached the duty of fair hearing and fair representation owed Plaintiffs. Among other things, the Union Defendants did not meet with Plaintiffs to discuss any of their grievances, did not investigate any of Plaintiffs' grievances, did not request material informationrelating to any of the Plaintiffs' grievances, did not prosecute any of Plaintiffs' grievances with the Labor Relations Committee, did not respond to any of these grievances, and did not provide any of the Plaintiffs with any written correspondence responding to these grievances. Plaintiffs are informed and believe, and thereon allege, **DWP and Local 18** 13 acted towards Plaintiffs in bad faith and out of hostility towards Plaintiffs.

36. Because the Union Defendants breached their duty of fair representation, Plaintiffs lost the right to enforce through arbitration their claims against the DWP for breach of the collective bargaining agreement Plaintiff have been compelled to initiate this action to obtain relief under their claims against the **DWP and Local 18** have incurred the costs, attorney's fees, and expenses of this action that, but for the Union Defendants' breach of duty, they would not have incurred. In addition, because of the Union Defendants' breach of duty, Plaintiffs have lost the ability to obtain the benefits of a speedy resolution of their dispute with the DWP have incurred additional loss by reason of the Union Defendants' breach of duty and delay, including the time-value of any monetary relief they obtain from the **DWP and Local 18** emotional distress and suffering.

*SECOND CLAIM FOR RELIEF*

**(Breach Of Collective Bargaining Agreement)**

**(The Labor Management Relations Act; 29 U.S.C. § 185, *et seq.*)**

**By Plaintiffs Against Defendant DWP and Local 18**

37. The allegations set forth in paragraphs 1 through 37 are incorporated herein by reference.

38. **DWP and Local 18** conspired together to get rid of plaintiff and violate plaintiff rights at the hearing. Both defendants engaged in favoritism and/or discrimination when allowing a hearing to be heard based on fraudulent documents submitted.

Complaint- RODERICK MOTLEY

# Memorandum of Points and Authorities

## Introduction

The Unions intentionally and grossly failed to represent Plaintiff, resulting in loss of income, retirement and benefits. With increasing frequency, employees are bringing suit in federal courts against their unions for failing to represent them adequately in collective bargaining with their employers and in the administration of collective bargaining agreements. I No statute expressly states that a union has a duty to represent its members fairly- however failure and refusal to represent is gross neglect .2 Nevertheless, courts have imposed a duty of fair representation on unions3 because a union chosen by a majority of employees is granted the exclusive right to act as bargaining agent for all employees in that bargaining unit.4 Under

1. T. Boyce, Fair Representation, The NLRB, and The Courts 3 (1978); Hickey & Murphy, Limitation Periods of § 301 Suits Need Clarification, Legal Times, Nov. 8, 1982, at 16, col. 1; Sachs & Gurewitz, Union's Duty of Fair Representation, 61 Mich. B.J. 526, 526 (1982); Comment, Post-Vaca Standards of the Union's Duty of Fair Representation: Consolidating Bargaining Units, 19 Vill. L. Rev. 885, 917 (1974); see, e.g., Badon v. General Motors Corp., 679 F.2d 93, 95 (6th Cir. 1982) (failure to process pension claim adequately); Waiters Union, Local 781 v. Hotel Ass'n, 498 F.2d 998, 999 (D.C. Cir. 1974) (failure to consider members' interests before negotiating a collective bargaining agreement); Dent v. United States Postal Serv., 538 F. Supp. 1079, 1081 (S.D. Ohio 1982) (failure to enforce the collective bargaining agreement); Lake v. Martin Marietta Corp., 538 F. Supp. 725, 726 (M.D. Fla. 1982) (failure to process grievance on time). 2. Bowen v. United States Postal Serv., 103 S. Ct. 588, 604 n.9 (1983) (White, J., concurring in part, dissenting in part); Williams v. Yellow Cab Co., 200 F.2d 302, 305 (3d Cir. 1952), cert. denied, 346 U.S. 840 (1953); R. Gorman, Basic Text on Labor Law 724-25 (1976). 3. The duty of fair representation was first recognized by the Supreme Court in Steele v. Louisville & Nash. R.R., 323 U.S. 192, 202-03 (1944), a case decided under the Railway Labor Act, 45 U.S.C. §§ 151-188 (1976). It was later applied to a case arising under the National Labor Relations Act, 29 U.S.C. §§ 151-169 (1976 & Supp. IV 1980), in Ford Motor Co. v. Huffman, 345 U.S. 330, 337-38 (1953). See Vaca v. Sipes, 386 U.S. 171, 177 (1967); T. Boyce, supra note 1, at 3-6; R. Gorman, supra note 2, at 695-98; Cox, The Duty of Fair Representation, 2 VilL L. Rev. 151, 151-53 (1957); Grenig, The Statute of Limitations in Fair Representation Cases, 33 Lab. L.J. 483, 483 (1982). 4. Section 9(a) of the NLRA

provides in relevant part: Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment. 29 U.S.C. § 159(a) (1976); see Vaca v. Sipes, 386 U.S. 171, 177 (1967); Ford Motor Co. v. Huffman, 345 U.S. 330, 337 (1953); Lehmann, The Union's Duty of Fair Representation-Steele and Its Successors, 30 Fed. B.J. 280, 280 (1971); Note, Statutes of Limitations When Section 301 and Fair Representation Claims Are Joined: Must They Be the Same?, 49 Fordham L. Rev. 1058, 1059 & n.7 (1981) [hereinafter cited as Must They Be the Same?]; Note, Statutes of Limitations Governing Fair 896

1983] LABOR STATUTE OF LIMITATIONSthe terms of the National Labor Relations Act (NLRA),5 employees surrender certain individual rights and interests to their union for the good of the collective whole. 6 A union, therefore, has a responsibility "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" 7 When a union breaches this duty by acting in an arbitrary, discriminatory or bad faith manner," an injured employee may bring an action in state or federal court or before the National Labor Relations Board (NLRB).9 Just as no statute imposes this duty, no statute sets any limitation period within which the injured employee must bring his suit for breach of the duty of fair representation.' 0 As a result, courts have taken various approaches in deciding which limitation to apply. This has led to the adoption of several different time periods, depending on the manner in which the action is characterized," the jurisdiction in which the action is brought' 2 and whether it is brought in conjunction

Representation Action Against Union When Brought with Section 301 Action Against Employer, 44 Geo. Wash. L. Rev. 418, 419 (1976). 5. 29 U.S.C. §§ 151-169 (1976 & Supp. IV 1980). 6. Id. § 157 (1976) (union may require "membership in a labor organization as a condition of employment"); see Emporium Capwell Co. v. Western Addition Community Org., 420 U.S. 50, 69-70 (1975) (concerted activity to coerce employer in circumvention of union is not protected); NLRB v. Allis-Chalmers Mfg. Co., 388 U.S. 175, 180-81 (1967) (labor policy "extinguishes the individual employee's power to order his own relations with his employer and creates a power vested in the chosen representative"); J.I. Case Co. v. NLRB, 321 U.S. 332, 337 (1944) (individual employment contracts must yield to collective bargaining agreement); Cox, supra note 3, at 151-52 (only the union can arrange the terms and conditions of employment). 7. Vaca v. Sipes, 386 U.S. 171, 177 (1967). 8. Id. at 190; accord Alexander

Memorandum of Point and Authorities

v. International Union of Operating Eng'rs, 624 F.2d 1235, 1240 (5th Cir. 1980); Ryan v. New York Newspaper Printing Pressmen's Union No. 2, 590 F.2d 451, 455 (2d Cir. 1979); Ruzicka v. General Motors Corp., 523 F.2d 306, 309 (6th Cir. 1975). 9. Grenig, supra note 3, at 486; Sachs & Gurewitz, supra note 1, at 528; see Vaca v. Sipes, 386 U.S. 171, 179-80 (1967); R. Gorman, supra note 2, at 698-705. 10. Howard v. Aluminum Workers Int'l Union, 589 F.2d 771, 773 (4th Cir. 1978); Butler v. Local Union 823, Int'l Bhd. of Teamsters, 514 F.2d 442, 446 (8th Cir.), cert. denied, 423 U.S. 924 (1975); Suwanchai v. International Bhd. of Elec. Workers, Local 1973, 528 F. Supp. 851, 857 (D.N.H. 1981); R. Gorman, supra note 2, at 724-25; Must They Be the Same?, supra note 4, at 1061. 11. Compare Newton v. Local 801 Frigidaire Local of the Int'l Union of Elec. Workers, 684 F.2d 401, 403 (6th Cir. 1982) (applying six-year period for liability created by statute) with King v. Corn Prods., 538 F. Supp. 569, 571 (N.D. Ill. 1982) (applying 10-year statute for written contracts) with Walsh v. Boss Linco Lines, 537 F. Supp. 363, 363-64 (D.N.J. 1981) (applying 90-day statute to vacate arbitration awards). 12. Compare King v. Corn Prods., 538 F. Supp. 569, 571-72 (N.D. Il. 1982) (applying Illinois 10-year statute for breach of contract) with Kennedy v. Wheeling

FORDHAM LAW REVIEW

with a related action against the employer. 13 The statutory periods that have been adopted include those for breach of both oral' 4 and written 15 contract, tort,16 including malpractice,17 liability created by statute,'8 vacation of arbitration awards 19 and bringing unfair labor practice charges before the NLRB. 2 0

Pittsburgh Steel Corp., 81 L.R.R.M. (BNA) 2349, 2349 (4th Cir. 1972) (applying West Virginia five-year statute for breach of oral contract); compare Edwards v. Sea-Land Serv., Inc., 678 F.2d 1276, 1292 (5th Cir. 1982) (applying Texas two-year tort statute) with Hand v. International Chem. Workers Union, 681 F.2d 1308, 1313 (11th Cir. 1982) (applying Florida four-year tort statute); compare Walsh v. Boss Linco Lines, 537 F. Supp. 363, 363-64 (D.N.J. 1981) (applying New Jersey 90-day statute to vacate arbitration awards) with Suwanchai v. International Bhd. of Elec. Workers, Local 1973, 528 F. Supp. 851, 861 (D.N.H. 1981) (applying New Hampshire one-year statute to vacate arbitration awards). 13. Compare Howard v. Aluminum Workers Int'l Union, 589 F.2d 771, 773-74 (4th Cir. 1978) (in action against union alone, Virginia's two-year tort statute applies) with Kennedy v. Wheeling-Pittsburgh Steel Corp., 81 L.R.R.M. (BNA) 2349, 2349 (4th Cir. 1972) (action against both union and employer, West Virginia's fiveyear contract statute applies to both defendants). 14. E.g., Kennedy v. Wheeling-Pittsburgh Steel Corp., 81 L.R.R.M. (BNA) 2349, 2349 (4th Cir. 1972); Dent v. United States Postal Serv., 538 F. Supp.

1079, 1083 (S.D. Ohio 1982); see also Grant v. Mulvihill Bros. Motor Serv., 428 F. Supp. 45, 48 (N.D. Ill. 1976) (undecided between oral or written contract limitations). 15. E.g., Warren v. International Bhd. of Teamsters, 544 F.2d 334, 337 (8th Cir. 1976); Butler v. Local Union 823, Int'l. Bhd. of Teamsters, 514 F.2d 442, 447 (8th Cir.), cert. denied, 423 U.S. 924 (1975); King v. Corn Prods., 538 F. Supp. 569, 571 (N.D. Ill. 1982). 16. E.g., Washington v. Northland Marine Co., 681 F.2d 582, 586 (9th Cir. 1982); Edwards v. Sea-Land Serv., Inc., 678 F.2d 1276, 1292 (5th Cir. 1982); Howard v. Aluminum Workers Int'l Union, 589 F.2d 771, 774 (4th Cir. 1978); De Arroyo v. Sindicato de Trabajadores Packinghouse, 425 F.2d 281, 287 (1st Cir.), cert. denied, 400 U.S. 877 (1970). 17. Assad v. Mount Sinai Hosp., No. 82-7251, slip op. at 2294 (2d Cir. Mar. 9, 1983); Flowers v. Local 2602 of the United Steel Workers, 671 F.2d 87, 91 (2d Cir.), cert. granted, 103 S. Ct. 442 (1982); see United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 74 (1981) (Stevens, J., concurring in part, dissenting in part) ("employee's claim against his union is properly characterized ... as a malpractice claim"); Lake v. Martin Marietta Corp., 538 F. Supp. 725, 728-29 (M.D. Fla. 1982) (applying twoyear limitations period to recover lost wages but noting that malpractice is also a two-year limitations period). 18. E.g., Newton v. Local 801 Frigidaire Local of the Int'l Union of Elec. Workers, 684 F.2d 401, 403 (6th Cir. 1982); Heritage v. Board of Educ., 447 F. Supp. 1240, 1243-44 (D. Del. 1978); Canada v. United Parcel Serv., Inc. 446 F. Supp. 1048, 1052 (N.D. Ill. 1978). 19. E.g., Rigby v. Roadway Express, Inc., 680 F.2d 342, 344 (5th Cir. 1982); Wilcoxen v. Kroger Food Stores, 545 F. Supp. 1019, 1021 (E.D. Mo. 1982); Suwanchai v. International Bhd. of Elec. Workers, Local 1973, 528 F. Supp. 851, 861 (D.N.H. 1981); Walsh v. Boss Linco Lines, 537 F. Supp. 363, 364 (D.N.J. 1981). 20. E.g., Badon v. General Motors Corp., 679 F.2d 93, 99 (6th Cir. 1982); Lewis v. Harbison-Walker Refractories, 542 F. Supp. 1381, 1384 (N.D. Ind. 1982); Collins v. Car Carriers, Inc., 536 F. Supp. 776, 778 (N.D. Ill. 1982).

[Vol. 51

## LABOR STATUTE OF LIMITATIONS

These limitation periods, with the exception of the unfair labor practice statute, are governed by state law and vary among jurisdictions.2 ' Thus, the amount of time that an employee will have to sue for breach of the duty of fair representation depends upon the state in which the action is brought. As a result, this federally created right, premised on national labor policy,22 may be denied to a plaintiff in one state while available to a plaintiff in another, even though the two claims arose at the same time. Moreover, failure to characterize the action consistently results in the adoption of different periods, not only among the states, but sometimes within a particular state.23 The expenditure of time, money and

judicial resources required to litigate the issue of which statute of limitations is appropriate 24 could be avoided if a uniform period were established for these claims. This Note argues that the goals of certainty, uniformity and the promotion of labor stability require application of a single limitations period to all suits for breach of the duty of fair representation. Part I examines the relationship between the duty of fair representation and a breach of contract claim under section 301 of the Labor Management Relations Act (LMRA) 25 and endeavors to refute the argument that the same statute of limitations must be applied to these different causes of action. Part II analyzes various statutes of limitations available to courts when Congress has failed to provide a limitations period

21. See supra notes 14-19 and accompanying text. 22. See Abrams v. Carrier Corp., 434 F.2d 1234, 1251 (2d Cir. 1970), cert. denied, 401 U.S. 1009 (1971). See supra notes 3-7 and accompanying text. 23. Compare Hand v. International Chem. Workers Union, 681 F.2d 1308, 1313 (11th Cir. 1982) (applying Florida four-year tort statute) with Sanders v. Grand Union Co., 541 F. Supp. 621, 625 (M.D. Fla. 1982) (applying Florida 90-day period for actions to vacate arbitration awards); compare Kaftantzis v. D & L Transp. Co., 531 F. Supp. 566, 570 (N.D. 111. 1982) (applying the six-month period of § 10(b) of the NLRA) with King v. Corn Prods., 538 F. Supp. 569, 571 (N.D. Ill. 1982) (applying Illinois ten-year statute for written contracts) with Keenon v. Illinois Bell Tel. Co., No. 80 C 3935, slip op. at 2 (N.D. Ill. Feb. 10, 1982) (applying Illinois 90day period for actions to vacate arbitration awards); compare Flowers v. Local 2602 of the United Steel Workers, 671 F.2d 87, 91 (2d Cir.) (applying New York threeyear statute for nonmedical malpractice), cert. granted, 103 S. Ct. 442 (1982) with Byrne v. Buffalo Creek R.R., 536 F. Supp. 1301, 1308-09 (W.D.N.Y. 1982) (applying New York six-year contract statute). 24. Commentators have noted that uncertainty over this issue has resulted in extensive litigation. See Wacker, Litigation For The Union, in Basic Labor Relations 304 (PLI 1981) (issue is in such conflict that "the statute of limitations should always be pled as a defense to a fair representation action, regardless of what the law may appear to be"); Hickey & Murphy, supra note 1, at 16, col. 1 (duty of fair representation "has become a source of uncertainty and contention, as . . . employees, and unions litigate and relitigate the issue of the appropriate statute of limitations for such suits"). 25. 29 U.S.C. §§ 141-187 (1976 & Supp. IV 1980).

1983]

900 FORDHAM LAW REVIEW [Vol. 51

for a federal right. The Note concludes that the adoption of the sixmonth period imposed by section 10(b) of the NLRA is appropriate.

# I. THE DUTY OF FAIR REPRESENTATION AND SECTION 301 OF THE LABOR MANAGEMENT RELATIONS ACT

In selecting an appropriate statute of limitations for a breach of the duty of fair representation, courts often look to the limitations period that is applied to a claim against an employer for violation of a collective bargaining agreement. 26 These claims, which are authorized by section 301 of the LMRA,2 7 often require proof of some of the same elements as those in breach of duty claims. This is so because collective bargaining agreements generally provide an exclusive mechanism for the resolution of employee grievances.28 Therefore, if an employee sues his employer under section 301 for violation of such an agreement,2 9 he must show a lack of proper representation by the

26. See, e.g., Howard v. Aluminum Workers Int'l Union, 589 F.2d 771, 773 (4th Cir. 1978); Butler v. Local 823, Int'l Bhd. of Teamsters, 514 F.2d 442, 447-48 (8th Cir.), cert. denied, 423 U.S. 924 (1975); Fedor v. Hygrade Food Prods. Corp., 533 F. Supp. 269, 272 (E.D. Pa.), aff'd, 687 F.2d 8 (3d Cir. 1982); Suwanchai v. International Bhd. of Elec. Workers, Local 1973, 528 F. Supp. 851, 861 (D.N.H. 1981); Kikos v. International Bhd. of Teamsters, 526 F. Supp. 110, 112-13 (E.D. Mich. 1981); Sheeran v. M.A. Bruder & Sons, 524 F. Supp. 567, 570 (E.D. Pa. 1981). 27. Section 301 of the LMRA provides: Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce. . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. 29 U.S.C. § 185(a) (1976). Employees have standing to sue their employers under this provision. Smith v. Evening News Ass'n, 371 U.S. 195, 200-01 (1962). An employee may join the union as a defendant in a § 301 suit. See Humphrey v. Moore, 375 U.S. 335, 343-44 (1964). 28. Bowen v. United States Postal Serv., 103 S. Ct. 588, 596 n.14 (1983) ("Most collective-bargaining agreements . . . contain exclusive grievance-arbitration procedures and give the union power to supervise the procedure."). The grievance procedure usually consists of several steps, in each of which a union presents an employee's grievance at progressively higher levels of management. F. Elkouri & E. Elkouri, How Arbitration Works 120-23 (3d ed. 1973). The Bureau of National Affairs maintains a file of over 5000 collective bargaining agreements. Basic Patterns In Union Contracts (BNA), at v (9th ed. 1979). In a sample of 400 contracts covering a cross section of industry, geographical area and number of employees covered, id., all but two of the agreements contained grievance resolution procedures, id. at 11, and 96 % of the collective bargaining agreements sampled provided for arbitration as the final step in the grievance procedure, id. at 15. 29. See Clayton v. UAW, 451 U.S. 679, 681 (1981) ("An employee

... must attempt to exhaust any exclusive grievance and arbitration procedures established by [the collective bargaining] agreement before he may maintain a suit against his union

LABOR STATUTE OF LIMITATIONS

union in arbitration30 or a failure by the union to process the grievance properly. 3' Conversely, in a suit against his union, the employee must prove that the employer breached the collective bargaining agreement in order to establish that he has suffered actual damage as a result of the union's breach of duty.3 2 In such a situation, the injured employee may elect to sue his employer under section 301, 33 his union for breach of the duty of fair representation, 34 or both.35 When the actions are brought together in a "hybrid § 301/breach-of-duty suit," 36 some courts apply a single statute of limitations to both claims.37 They reason that subjecting both the union and the employer to liability for the same period of

or employer under § 301(a)."). The rule is designed to "protect the integrity of the collective-bargaining process and to further that aspect of national labor policy that encourages private rather than judicial resolution of disputes." Id. at 687; see Republic Steel Corp. v. Maddox, 379 U.S. 650, 652-53 (1965). 30. The finality of an arbitration award will be removed when the union has breached its duty of fair representation. Hines v. Anchor Motor Freight, 424 U.S. 554, 571 (1976); see United Parcel Serv., Inc., v. Mitchell, 451 U.S. 56, 61 (1981). 31. Vaca v. Sipes, 386 U.S. 171, 185 (1967); see Warren v. International Bhd. of Teamsters, 544 F.2d 334, 341 (8th Cir. 1976); Butler v. Local 823, Int'l Bhd. of Teamsters, 514 F.2d 442, 449-50 & n.11 (8th Cir.), cert. denied, 423 U.S. 924 (1975). 32. Hines v. Anchor Motor Freight, 424 U.S. 554, 570 (1976); see Buchholtz v. Swift & Co., 609 F.2d 317, 327 (8th Cir. 1979), cert. denied, 444 U.S. 1018 (1980); Suwanchai v. International Bhd. of Elec. Workers, Local 1973, 528 F. Supp. 851, 855 (D.N.H. 1981). 33. Smith v. Evening News Ass'n, 371 U.S. 195, 200-01 (1962); see, e.g., McNutt v. Airco Indus. Gases Div., 687 F.2d 539, 539-40 (1st Cir. 1982); Liotta v. National Forge Co., 629 F.2d 903, 905 (3d Cir. 1980), cert. denied, 451 U.S. 970 (1981); Edie v. Brundage Co., 546 F. Supp. 837, 838 (W.D. Mich. 1982). 34. Edwards v. Sea-Land Serv., Inc., 678 F.2d 1276, 1282 (5th Cir. 1982); see Vaca v. Sipes, 386 U.S. 171, 186-87 (1967); see, e.g., Newton v. Local 801 Frigidaire Local of the Int'l Union of Elec. Workers, 684 F.2d 401, 401 (6th Cir. 1982); Howard v. Aluminum Workers Int'l Union, 589 F.2d 771, 772 (4th Cir. 1978); Suwanchai v. International Bhd. of Elec. Workers, Local 1973, 528 F. Supp. 851, 854 (D.N.H. 1981). 35. Vaca v. Sipes, 386 U.S. 171, 187 (1967); Humphrey v. Moore, 375 U.S. 335, 343-44 (1964); see, e.g., Flowers v. Local 2602 of the United Steel Workers, 671 F.2d 87, 88 (2d Cir.), cert. granted, 103 S. Ct. 442 (1982); Lewis v. Harbison-

Walker Refractories, 542 F. Supp. 1381, 1382 (N.D. Ind. 1982); Lake v. Martin Marietta Corp., 538 F. Supp. 725, 726 (M.D. Fla. 1982). 36. Bowen v. United States Postal Serv., 103 S. Ct. 588, 602 (1983) (White, J., dissenting). 37. Gallagher v. Chrysler Corp., 613 F.2d 167, 169 (6th Cir.), cert. denied, 449 U.S. 841 (1980); Butler v. Local 823, Int'l Bhd. of Teamsters, 514 F.2d 442, 448 (8th Cir.), cert. denied, 423 U.S. 924 (1975); Abrams v. Carrier Corp., 434 F.2d 1234, 1252 (2d Cir. 1970), cert. denied, 401 U.S. 1009 (1971); Fedor v. Hygrade Food Prods. Corp., 533 F. Supp. 269, 272 (E.D. Pa.), aff'd, 687 F.2d 8 (3d Cir. 1982); see Rigby v. Roadway Express, Inc., 680 F.2d 342, 343-44 (5th Cir. 1982).

1983]

FORDHAM LAW REVIEW

time makes it possible to apportion damages according to the respective fault of the parties .3 Recently, however, the Supreme Court eliminated this reason as a potential rationale for identical limitations periods by establishing the proper apportionment of liability. In Bowen v. United States Postal Service,39 the Court ruled that a union can be held liable only for the increase in damages flowing from its failure to represent an employee fairly. 40 A union, therefore, is liable for an employee's damages accruing after an unfavorable arbitration award is rendered or from the time that an arbitration award would have been rendered had the union properly pursued the employee's grievance. 4' The union will not be responsible for the damages caused by the employer even if the action against the employer is time barred. 42 Thus, applying different statutes of limitations to both claims will not affect the liability of the union. The employer, however, remains secondarily liable for the union's portion of the damages if the employee cannot collect those damages from the union. 43 If the statute of limitations bars the claim against the union but not the employer, the employer will be liable for the entire damage award.44 This result, however, is unlikely because the Supreme Court recently held, in United Parcel Service, Inc. v. Mitchell,45 that in situations in which an arbitration award has been rendered the employer is subject to the statute of limitations governing actions to vacate arbitration awards. 46 This period, which typically

38. See, e.g., Butler v. Local 823, Int'l Bhd. of Teamsters, 514 F.2d 442, 447-48 (8th Cir.), cert. denied, 423 U.S. 924 (1975); Abrams v. Carrier Corp., 434 F.2d 1234, 1252 (2d Cir. 1970), cert. denied, 401 U.S. 1009 (1971); T. Boyce, supra note 1, at 93-94; R. Gorman, supra note 2, at 725; Hickey & Murphy, supra note 1, at 16, col. 3; Must They Be the Same?, supra note 4, at 1072-74. The formula for damages was originally set forth by the Supreme Court in Vaca v. Sipes, 386 U.S. 171 (1967): The governing principle, then, is to apportion liability between the employer and the union according to the damage

caused by the fault of each. Thus, damages attributable solely to the employer's breach of contract should not be charged to the union, but increases if any in those damages caused by the union's refusal to process the grievance should not be charged to the employer. Id. at 197-98. 39. 103 S. Ct. 588 (1983). 40. Id. at 598-99 (citing Czosek v. O'Mara, 397 U.S. 25, 29 (1970)). 41. See 103 S. Ct. at 595-96; id. at 606 n.13 (White, J., dissenting). 42. The union and the employer may be jointly and severally liable if the union affirmatively induces the employer to breach the collective bargaining agreement. Id. at 605 (White, J., dissenting); Vaca v. Sipes, 386 U.S. 171, 197 n.18 (1967). 43. Bowen v. United States Postal Serv., 103 S. Ct. 588, 595 n.12 (1983). 44. See id. at 606 (White, J., dissenting). 45. 451 U.S. 56 (1981). 46. Id. at 64.

[Vol. 51

LABOR STATUTE OF LIMITATIONS

lasts three months,47 is no longer than any period to which the union has been or is likely to be subject. Consequently, this justification offered by the courts for applying the same statute of limitations to breach of duty and section 301 claims is no longer compelling.


**II. AN APPROPRIATE LIMITATIONS PERIOD** When Congress fails to provide a limitations period for an action pursuant to federal law, courts may either: 1) apply no limitations period; 2) import the equitable doctrine of laches; 3) judicially create a limitations period; 4) adopt an analogous state period; or 5) adopt an analogous federal period.4 8

A. No Limitation Placing no time limitation on breach of duty actions would guarantee that all meritorious claims could be heard. Statutes of limitations, however, serve several useful purposes. They protect potential defendants from continuing liability and the necessity of defending stale claims,49 preserve judicial integrity by helping to ensure full and fair advocacy of claims,50 and decrease the number of suits filed,51 thereby

47. Id. at 63 n.5; see, e.g., Fla. Stat. Ann. § 682.13(2) (West 1983); Ill. Ann. Stat. ch. 10, § 112(b) (Smith-Hurd 1975 & Supp. 1982-1983); N.J. Stat. Ann. § 2A:24-7 (West 1952); N.Y. Civ. Prac. Law § 7511(a) (McKinney 1980); Tex. Stat. Ann. art. 237 see. B (Vernon 1973). But see Cal. Civ. Proc. Code § 1288 (West 1982) (100 days); Hawaii Rev. Stat. § 658-11 (1976) (10 days); Mass. Ann. Laws ch. 150C, § 11(b) (Michie/Law. Co-op. 1976) (30 days); N.H. Rev. Stat. Ann. § 542:8 (1974) (one year). 48. McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 229 (1958) (Brennan, J., concurring); International Union of Operating Eng'rs v. Fischbach & Moore, Inc., 350 F.2d 936, 937 (9th Cir. 1965), cert. denied,

384 U.S. 904 (1966); Note, Limitation Borrowing in Federal Courts, 77 Mich. L. Rev. 1127, 1130 (1979) [hereinafter cited as Limitation Borrowing]; Note, Disparities in Time Limitations on Federal Causes of Action, 49 Yale L.J. 738, 744-45 (1940); see UAW v. Hoosier Cardinal Corp., 383 U.S. 696, 713-14 (1966) (White, J., dissenting). 49. See United States v. Kubrick, 444 U.S. 111, 117 (1979); American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 554 (1974); Burnett v. New York Cent. R.R., 380 U.S. 424, 428 (1965); 1 H. Wood, A Treatise on the Limitation of Actions § 4, at 7-11 (4th ed. 1916). 50. Special Project, Time Bars in Specialized Federal Common Law: Federal Rights of Action and State Statutes of Limitations, 65 Cornell L. Rev. 1011, 1017 (1980) [hereinafter cited as Time Bars]. The judicial system relies on adversaries to arrive at the truth through the introduction and examination of evidence. When a claim is stale, the adversarial system is disadvantaged by missing witnesses and faded memories. See United States v. Kubrick, 444 U.S. 111, 117 (1979); Chase See. Corp. v. Donaldson, 325 U.S. 304, 314 (1945) (citing Order of R.R. Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 348-49 (1944)). 51. See United States v. Western Pac. R.R., 352 U.S. 59, 72 (1956); Time Bars, supra note 50, at 1016-17.

1983]

904 FORDHAM LAW REVIEW [Vol. 51

unburdening court dockets and allowing for more effective use of limited judicial resources. Moreover, as the Supreme Court has noted, statutes of limitations are essential in the labor area because rapid resolution of disputes is an important key to labor stability.52 Courts should therefore reject this alternative and implement a statute of limitations53 that would further these objectives.

B. Laches The laches defense allows courts to bar stale claims. 4 Adoption of the doctrine of laches in this context, however, would not promote uniformity of decision because the availability of this defense is determined on a case-by-case basis at the discretion of a trial judge.55 Thus, the goal of stability in labor law might be defeated. 56 Furthermore, laches is an equitable doctrine and should not be imported to an action at law when a legal alternative is readily available.57

52. See United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 63-64 (1981); UAW v. Hoosier Cardinal Corp., 383 U.S. 696, 707 (1966). 53. See Adams v. Woods, 6 U.S. 336, 341, 2 Cranch 336, 342 (1805). 54. Laches will bar a claim if plaintiff's unreasonable delay has prejudiced the defendant. D. Dobbs, Handbook on the Law of Remedies 43 (1973); e.g., Goodman v. McDonnell Douglas Corp., 606 F.2d 800, 804 (8th Cir. 1979), cert. denied. 446 U.S. 913 (1980); Adair v. Shallenberger, 119 F.2d 1017, 1020 (7th Cir. 1941); D.O. Haynes & Co. v. Druggists' Circular, 32 F.2d 215, 216-17 (2d Cir. 1929). 55. The

availability of a laches defense is a question "primarily addressed to the discretion of the trial court." Gardner v. Panama R.R., 342 U.S. 29, 30 (1951) (per curiam); accord Goodman v. McDonnell Douglas Corp., 606 F.2d 800, 804 (8th Cir. 1979), cert. denied, 446 U.S. 913 (1980); see Advanced Hydraulics, Inc. v. Otis Elevator, Co., 525 F.2d 477, 479 (7th Cir.), cert. denied, 423 U.S. 869 (1975). 56. See International Union of Operating Eng'rs v. Fischbach & Moore, Inc., 350 F.2d 936, 937 (9th Cir. 1965) (rejects laches for suits arising under § 303 of the LMRA because application of the doctrine would cause "uniform uncertainty"), cert. denied, 384 U.S. 904 (1966); Byrne v. Buffalo Creek R.R., 536 F. Supp. 1301, 1309 (W.D.N.Y. 1982) ("doctrine of laches should not be applied to defeat an otherwise timely claim absent extraordinary circumstances"). 57. See Thropp v. Bache Halsey Stuart Shields, Inc., 650 F.2d 817, 822-23 (6th Cir. 1981); Whipple v. Dickey, 401 N.E.2d 787, 789 n.1 (Ind. App. 1980); McNulty v. Heitman, 600 S.W.2d 168, 172 (Mo. App. 1980); R. Newman, Equity and Law: A Comparative Study 246 (1961). Because a union cannot reinstate a discharged employee, most breach of duty claims seek damages in the form of backpay, which is an action at law. See, e.g., Ballard v. El Dorado Tire Co., 512 F.2d 901, 904-05 (5th Cir. 1975); Sanders v. Grand Union Co., 541 F. Supp. 621, 622 (M.D. Fla. 1982); Suwanchai v. International Bhd. of Elec. Workers, Local 1973, 528 F. Supp. 851, 854 (D.N.H. 1981); Bates v. American Tara Corp., 111 L.R.R.M. (BNA) 2149, 2149 (N.D. Ga. 1981). Moreover, since the merger of law and equity, courts generally look to the statute of limitations for an estimate of the reasonable period for laches. D.O. Haynes & Co. v. Druggists' Circular, 32 F.2d 215, 216-17 (2d Cir. 1929); Rakstiene v. Kroulaidis, 33 Ill. App. 3d 1067, 1072, 339 N.E.2d 447, 451 (1975); D. Dobbs, supra note 54, at 43; 2 J. Pomeroy, Treatise on Equity Jurisprudence § 419b (5th ed.

LABOR STATUTE OF LIMITATIONS

C. Judicial Invention The Supreme Court refused to invent a uniform period for section 301 suits when it was urged to devise a period that would be applicable in all jurisdictions.-" The Court in UAW v. Hoosier Cardinal Corp.59 indicated that Congress is aware of the judicial practice of adopting analogous periods, so "it cannot be fairly inferred that when Congress left § 301 without a uniform time limitation, it did so in the expectation that the courts would invent one." ' 60 Unless and until the Supreme Court elects to devise a uniform statute of limitations for breach of the duty of fair representation, lower courts should refrain from choosing this alternative because it would likely result in further inconsistencies among jurisdictions.

D. Adopting an Analogous State Statute

1. Overlooking the Federal Interest

Federal courts often borrow analogous state statutes of limitations for federal rights without limitations periods6 1 on the theory that when Congress enacts legislation without such a period, it does so with the expectation that courts will borrow an analogous state statute of limitations. 12 This procedure, however, is by no means mandated.6 3 Moreover, the duty of fair representation was not expressly created by Congress; 64 rather, it was judicially derived from the NLRA several years after that statute was enacted.6 5 It cannot be said, therefore,

1941). But see Groesbeck v. Morgan, 206 N.Y. 385, 389, 99 N.E. 1046, 1047 (1912) (laches may bar claim for equitable relief brought within statute of limitations). 58. UAW v. Hoosier Cardinal Corp., 383 U.S. 696, 702-03 (1966). 59. 383 U.S. 696 (1966). 60. Id. at 703. 61. See, e.g., United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 64 (1981) (state period for § 301 claim); Flowers v. Local 2602 of the United Steel Workers, 671 F.2d 87, 91 (2d Cir.) (state period for breach of duty claims), cert. granted, 103 S. Ct. 442 (1982); International Union of Operating Eng'rs v. Fischbach & Moore, Inc., 350 F.2d 936, 938-39 (9th Cir. 1965) (state periods for § 303 claims), cert. denied, 384 U.S. 904 (1966). Federal courts have borrowed state statutes of limitations since the 1800's. See, e.g., Campbell v. Haverhill, 155 U.S. 610 (1895); McCluny v. Silliman, 28 U.S. 167, 171-72, 3 Pet. 269, 277-78 (1830). 62. E.g., Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 367 (1977); UAW v. Hoosier Cardinal Corp., 383 U.S. 696, 703-04 (1966); Holmberg v. Armbrecht, 327 U.S. 392, 395 (1946). 63. See United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 65 (1981) (Stewart, J., concurring); UAW v. Hoosier Cardinal Corp., 383 U.S. 696, 709 (1966) (White, J., dissenting); Assad v. Mount Sinai Hosp., No. 82-7251, slip op. at 2292 (2d Cir. Mar. 9, 1983); Time Bars, supra note 50, at 1038-42. 64. See supra notes 2-7 and accompanying text. 65. Section 9(a) of the NLRA was enacted in 1935, Pub. L. No. 74-198, § 9(a), 49 Stat. 449, 453, while the duty of fair representation was not judicially applied to the NLRA until 1953 in Ford Motor Co. v. Huffman, 345 U.S. 330, 337-38 (1953).

1983]

906 FORDHAM LAW REVIEW [Vol. 51

that Congress impliedly acceded to the judicial practice of borrowing state statutes of limitation.6 8 Nevertheless, lower courts do apply state limitations periods to breach of duty claims, usually citing the Supreme Court's decision in Hoosier Cardinal for support.67 Hoosier Cardinal, however, involved only a section 301 suit and not a breach of duty action against the union.6A Moreover, a breach of duty claim is not a section 301 suit. It has a source of jurisdiction independent of that of section 301.119 Although an employee may elect to join his union as a defendant when he brings a section 301 claim, 70

jurisdiction for the claim against the union is derived from section 1337 of title 28 of the United States Code.71 This section provides that suits based on statutes regulating commerce may be brought in federal court. 72 Application of state statutes of limitations to section 301 claims may well be appropriate because state legislatures are familiar with breach of contract actions.73 They are unlikely, however, to have been exposed to the duty of fair representation, which is exclusively a federal right. "State legislatures do not devise their limitations periods with national interests in mind," ' 74 and although federal courts may exercise discretion to reject analogous state periods 75 that would impede

66. Limitation Borrowing, supra note 48, at 1133-34. 67. E.g., Abrams v. Carrier Corp., 434 F.2d 1234, 1251 (2d Cir. 1970), cert. denied, 401 U.S. 1009 (1971); De Arroyo v. Sindicato de Trabajadores Packinghouse, 425 F.2d 281, 287 (1st Cir.), cert. denied, 400 U.S. 877 (1970); Suwanchai v. International Bhd. of Elec. Workers, Local 1973, 528 F. Supp. 851, 857-58 (D.N.H. 1981). 68. 383 U.S. at 698-99. 69. Edwards v. Sea-Land Serv., Inc., 678 F.2d 1276, 1283 (5th Cir. 1982); De Arroyo v. Sindicato de Trabajadores Packinghouse, 425 F.2d 281, 283 n.1 (1st Cir.), cert. denied, 400 U.S. 877 (1970); Suwanchai v. International Bhd. of Elec. Workers, Local 1973, 528 F. Supp. 851, 854 & n.3 (D.N.H. 1982). 70. See supra note 35. 71. 28 U.S.C. § 1337 (1976 & Supp. IV 1980). Although some cases clearly hold that federal court jurisdiction of a breach of duty claim derives from § 1337, e.g., Edwards v. Sea-Land Serv., Inc., 678 F.2d 1276, 1282 (5th Cir. 1982); Beriault v. Local 40, Int'l Longshoremen's & Warehousemen's Union, 501 F.2d 258, 264-65 (9th Cir. 1974), other courts have taken jurisdiction based on § 301, e.g., Newton v. Local 801 Frigidaire Local of the Int'l Union of Elec. Workers, 684 F.2d 401, 401 (6th Cir. 1982); Ryan v. New York Newspaper Printing Pressmen's Union No. 2, 590 F.2d 451, 453 n.2 (2d Cir. 1979). The distinction may be due to a failure by courts to separate the breach of duty claim from the § 301 claim. Analysis of this issue, however, is beyond the scope of this Note. 72. 28 U.S.C. § 1337 (1976 & Supp. IV 1980). 73. See UAW v. Hoosier Cardinal Corp., 383 U.S. 696, 705 n.7 (1966). 74. Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 367 (1977). 75. See id. (action arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 (1976)); McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 224-25 & n.6 (1958) (state unseaworthiness statutes of limitations may not be applied if they interfere with federal rights provided by the Jones Act, 46 U.S.C. § 688 (1976)).

LABOR STATUTE OF LIMITATIONS

the policies of the NLRA, many fail to exercise that discretion adequately. 7 6 Furthermore, even the Court in Hoosier Cardinal recognized that some problems, "vital to the implementation of federal labor

policy," 77 may require the "application of ... rules on timeliness" other than those provided in analogous state statutes. 78 Enforcement of a union's duty of fair representation, vital to the labor policy of protecting employees, 79 is one of the situations that commands a departure from judicial reliance on state limitations periods.

2. Lack of Uniformity

The more substantial difficulty with applying a state statute of limitations is the lack of uniformity among states. Many different state causes of action are used by analogy by federal courts in their characterization of a duty of fair representation claim, resulting in the adoption of disparate statutes of limitations. 8 0 As long as a uniform federal statute of limitations is not applied, the total number of state limitations statutes that might be invoked is fifty times the number of possible characterizations. 81

76. For example, one district court simply applied a thirty-day statute to vacate arbitration awards to the employee's claim against her union without discussing how the statute was analogous to the breach of duty. Francis v. Koppers Co., 548 F. Supp. 1227, 1231 (D. Md. 1982). Plaintiff had filed her claim just 117 days after she had been informed by her union that her grievance had been dropped. Id. at 1229. Only one year earlier, the same court had rejected the statute because it abridged the plaintiffs federal rights. Fox v. Mitchell Transp., Inc., 506 F. Supp. 1346, 1349-50 (D. Md.), aff'd mem., 671 F.2d 498 (4th Cir. 1981). 77. 383 U.S. at 701. 78. Id. at 705 n.7. 79. Section I of the NLRA reads in part: "Experience has proved that protection by law of the right of employees to organize and bargain collectively safeguards commerce from injury, impairment [and] interruption." 29 U.S.C. § 151 (1976). Section 1(b) of the LMRA states that: "It is the purpose ... of this chapter, in order to promote the full flow of commerce, to prescribe the legitimate rights of ... employees [and) to protect the rights of individual employees in their relations with labor organizations." Id. § 141(b). As one commentator has noted, "[t]he employees' correlative right to fair representation is one of the three important safeguards the law affords individual workers against abuse of power by a union." Cox, supra note 3, at 151. The duty of fair representation should serve as a means of protecting employees through regulation of union power. Wellington, Union Democracy and Fair Representation: Federal Responsibility in a Federal System, 67 Yale L.J. 1327, 1357-61 (1958). 80. See supra notes 14-20 and accompanying text. 81. The number of possibilities is reduced by the fact that some states do not have separate statutes of limitations for every possible characterization. For example, only 42 states have statutes to vacate arbitration awards. United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 63 n.5 (1981). The applicable statutes may vary in length. For 1983]

FORDHAM LAW REVIEW

Furthermore, collective bargaining agreements may cover employees working in several states. 82 Consequently, two employees under the same agreement with the same relationship to their union may well have differing time periods within which to bring breach of duty claims. In Hoosier Cardinal, Justice White, dissenting from the decision to apply analogous state statutes to section 301 claims, noted that in such a situation "[s]imple justice dictates ... that the right of employees in different States to assert their federal claim should be equally available. '"8 3 Despite these shortcomings, many courts continue to rely on the adoption of state limitations periods for breach of duty claims. A comparison of the federal breach of duty claim with the state claims for which the statutes were designed, however, reveals no similarity. Moreover, an examination of the limitations periods themselves demonstrates that they are inappropriate for use with a breach of duty claim.

a. A contract statute of limitations

Until recently, several courts applied a breach of contract statute of limitations to actions against unions on the basis of the relationship between breach of duty claims and section 301 claims.8 4 But in United Parcel Service, Inc. v. Mitchell, 8 5 the Supreme Court decided that a contract statute of limitations is no longer the most appropriate period to apply to a section 301 action. 8 6 Moreover, regardless of the relation

actions to vacate arbitration awards, compare Hawaii Rev. Stat. § 658-11 (1976) (10 days) with N.H. Rev. Stat. Ann. § 542:8 (1974) (one year). For liability created by statute, compare Del. Code Ann. tit. 10, § 8106 (1974) (three years) with Ohio Rev. Code Ann. § 2305.07 (Page 1981) (six years). For tort actions, compare Tex. Rev. Civ. Stat. Ann. art. 5526 (Vernon 1982) (two years) with N.H. Rev. Stat. Ann. § 508:4 (1974 & Supp. 1981) (six years). 82. San Diego County Dist. Council of Carpenters v. Cory, 685 F.2d 1137, 114041 (9th Cir. 1982); see, e.g., Libby-Owens-Ford Co. v. NLRB, 495 F.2d 1195, 1197 (3d Cir.) (single bargaining unit consisting of employees in six states and Ottawa, Canada), cert. denied, 419 U.S. 998 (1974); Local 1325, Retail Clerks Int'l Ass'n v. NLRB, 414 F.2d 1194, 1205 (D.C. Cir. 1969) (court denied enforcement of NLRB ruling that bargaining unit may be determined on basis of state in which employees work); Metropolitan Life Ins. Co., 138 N.L.R.B. 734, 736 (1962) (bargaining unit of employees from three states); Barr's Jewelers, 131 N.L.R.B. 235, 238 (1961) (bargaining unit of employees from two states). 83. 383 U.S. at 711-12 (White, J., dissenting); see Assad v. Mount Sinai Hosp., No. 82-7251, slip op. at 2291 (2d Cir. Mar. 9, 1983). 84. See, e.g., Mitchell v. United Parcel Serv., Inc., 624 F.2d 394, 398 (2d Cir. 1980), rev'd, 451 U.S. 56, 64 (1981); Warren v. International Bhd.

of Teamsters, 544 F.2d 334, 337 (8th Cir. 1976); Abrams v. Carrier Corp., 434 F.2d 1234, 1252 (2d Cir. 1970), cert. denied, 401 U.S. 1009 (1971). 85. 451 U.S. 56 (1981). 86. Id. at 62.

[Vol. 51

LABOR STATUTE OF LIMITATIONS

ship between the claims, 7 a breach of the duty of fair representation and a breach of contract are not analogous because the duty of fair representation is not contractual; 88 it extends to employees of the bargaining unit who are not union members and thus have no contractual relationship with the union. 89 Indeed, the duty does not even arise from the collective bargaining agreement; it is a federally imposed obligation. ° 0

b. Vacation of arbitration award statutes In Mitchell, the Court held that in a section 301 action against an employer following grievance arbitration, the state statute of limitations to vacate an arbitration award is more appropriate than a statute of limitations for breach of contract.91 Some courts have taken Mitchell further, requiring that state vacation of arbitration award statutes be applied to breach of duty claims against unions." No union, however, was represented before the Supreme Court in Mitchell,9 3 and the Court's decision should therefore not be applied to breach of the duty of fair representation claims. Application of vacation of arbitration award statutes of limitations to breach of duty claims is inappropriate. Regardless of whether the action is brought alone or with a section 301 claim, no arbitrator will

87. See supra pt. I. 88. See United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 63 (1981); Vaca v. Sipes, 386 U.S. 171, 202 n.4 (1967) (Fortas, J., concurring); Newton v. Local 801 Frigidaire Local of the Int'l Union of Elec. Workers, 684 F.2d 401, 403 (6th Cir. 1982); Howard v. Aluminum Workers Int'l Union, 589 F.2d 771, 774 (4th Cir. 1978); T. Boyce, supra note 1, at 92; Must They Be the Same?, supra note 4, at 106466. 89. Howard v. Aluminum Workers Int'l Union, 589 F.2d 771, 774 (4th Cir. 1978); see Cox, supra note 3, at 157; Wellington, supra note 79, at 1335. 90. See supra notes 2-7 and accompanying text. 91. 451 U.S. at 62, 64. 92. See, e.g., Wilcoxen v. Kroger Food Stores, 545 F. Supp. 1019, 1021 (E.D. Mo. 1982) ("the [Mitchell] court held that the appropriate limitations period ... against a union for breach of its duty of fair representation is the period during which a party could move under state law for vacation of an arbitration award"); Fedor v. Hygrade Food Prods. Corp., 533 F. Supp. 269, 272 (E.D. Pa.) ("United Parcel requires courts to apply the same statute of limitations to both an employee's claim against his employer and his claim against his union"), afj'd, 687 F.2d 8 (3d Cir. 1982); Keenon v. Illinois Bell Tel. Co., No. 80 C 3935, slip op. at 2 (N.D. Ill. Feb. 10, 1982) ("in an action brought by an

employee against [a union] courts must apply the state statute of limitations . . . to vacate an arbitration award"). Courts have disagreed whether a vacation of arbitration award statute is applicable when no arbitration award has been rendered. Compare id. at 3 (statute applicable without arbitration award) with King v. Corn Prods., 538 F. Supp. 569, 571 (N.D. Ill. 1982) (statute not applicable). 93. See 451 U.S. at 58; id. at 71 (Stevens, J., concurring in part, dissenting in part).

1983]

FORDHAM LAW REVIEW

have rendered a decision on the breach of duty claim itself.94 The labor policies favoring arbitration are therefore not implicated by application of a non-arbitration statute of limitations to a breach of duty claim. Labor policy favors grievance arbitration because it allows the parties to settle disputes privately without resort to costly litigation, which heightens the adversarial nature of the conflict, 95 or to work stoppages, which halt production.9 When a section 301 action calls an arbitrator's award into question,97 the judicial policy of protecting the integrity of the arbitration process requires that only a brief time period be allowed for collateral attacks on the award.9" The claim

94. Id. at 73 (Stevens, J., concurring in part, dissenting in part). 95. Arbitration proceedings are more informal and less costly than court litigation because they may take place in the manner and at the location agreed to by the parties. See F. Elkouri & E. Elkouri, supra note 28, at 8-10, 22. Arbitration may be conducted without attorneys, briefs or other formalities. Id. at 23; see R. Gorman, supra note 2, at 543; C. Updegraff, Arbitration and Labor Relations 21 (1970). 96. See F. Elkouri & E. Elkouri, supra note 28, at 5; R. Gorman, .supra note 2, at 605-06; C. Updegraff, supra note 95, at 22-23. 97. In a suit against an employer, an employee generally seeks to obtain the same relief that was denied him by the arbitrator. To award such relief would effectively vacate the arbitration award. United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 61 (1981); Liotta v. National Forge Co., 629 F.2d 903, 905-06 (3d Cir. 1980), cert. denied, 451 U.S. 970 (1981); Sheeran v. M.A. Bruder & Sons, 524 F. Supp. 567, 570 (E.D. Pa. 1981). Courts disagree whether a vacation of arbitration award statute should be applicable when the employee's claim was dismissed by the union prior to arbitration. Compare King v. Corn Prods., 538 F. Supp. 569, 571 (N.D. Ill. 1982) (rule of Mitchell inapplicable absent arbitration award) and Lake v. Martin Marietta Corp., 538 F. Supp. 725, 728 (M.D. Fla. 1982) (same) with Martin v. Pullman Standard, 538 F. Supp. 1174, 1176 (W.D. Pa. 1982) (Mitchell applies even though grievance is dismissed prior to arbitration) and Lincoln v. District 9 of the Int'l Ass'n of Machinists, 539 F. Supp. 1346, 1348-49 (E.D. Mo. 1982) (same). The better-reasoned approach is to apply the vacation of arbitration awards statute of

limitations even though no arbitration decision is rendered. The period should begin to run when the employee receives notice of the union's refusal to continue processing the grievance, and he has exhausted any internal union appeals procedure, as is required by Clayton v. UAW, 451 U.S. 679, 692 (1981). First, the employer accepts a grievance resolution provision in the collective bargaining agreement as the exclusive means of dispute resolution. He should not be required to police the union's duty to ensure that all meritorious grievances are brought to arbitration. Second, once the employee has received notice that the union will not process his grievance further, he has a decision that is as final and binding as an arbitrator's award. Arbitration is the final step of grievance procedures, not a separate means of dispute resolution. See Francis v. Koppers Co., 548 F. Supp. 1227, 1231 (D. Md. 1982); Keenon v. Illinois Bell Tel. Co., No. 80 C 3935, slip op. at 3 (N.D. Ill. Feb. 10, 1982); Fields v. Babcock & Wilcox, 108 L.R.R.M. (BNA) 3150, 3151 (W.D. Pa. 1981); Hickey & Murphy, supra note 1, at 16, col. 3-4. But see Assad v. Mount Sinai Hosp., No. 82-7251, slip op. at 2281-82, 2288-89 (2d Cir. Mar. 9, 1983) (applying six-month period of § 10(b) to § 301 action because employee's claim was never arbitrated). 98. Section 302(d) of the LMRA provides that: "Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of

910 [Vol. 51

LABOR STATUTE OF LIMITATIONS

against the union, however, does not involve a challenge to an arbitration award.99 Rather, it challenges the union's representation of an employee during the grievance process. 0 An employee may prevail on his breach of duty claim while the arbitration award remains intact.' 01 Clearly, the policies supporting application of an abbreviated statute of limitations to section 301 actions that challenge arbitration awards do not apply to breach of duty claims. Moreover, the three-month duration of most vacation of arbitration award statutes 0 2 limits the time during which parties involved in arbitration can challenge the arbitration award. 0 3 The duty of fair representation claim, however, is a new and different claim that does not arise until after the arbitration decision has or should have been rendered.0 4 Until the grievance procedures are completed, the union

grievance disputes." 29 U.S.C. § 173(d) (1976). To further this policy, courts will compel arbitration of a grievance that is covered by the arbitration clause without looking to the merits of the claim. United Steelworkers v. American Mfg. Co., 363 U.S. 564, 568 (1960). To be excepted from arbitration, the dispute must be expressly excluded from the established grievance provision. United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 584-85 (1960). A court will not disturb the decision of an

arbitrator for errors of law or fact. See United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599 (1960); see also United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 63-64 (1981) (the grievance system may become unworkable if arbitration decisions could be challenged six years later). 99. United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 73 (1981) (Stevens, J., concurring in part, dissenting in part). 100. A union's duty requires that it not process a grievance in a perfunctory fashion. Vaca v. Sipes, 386 U.S. 171, 191 (1967); see Hines v. Local Union No. 377, Chauffeurs, 506 F.2d 1153, 1156 (6th Cir. 1974), rev'd on other grounds sub nom. Hines v. Anchor Motor Freight, 424 U.S. 554, 572 (1976). Because an employee is usually powerless to invoke the arbitration process on his own, see supra note 28, the grievance procedure, which is preferred by national labor policy as a substitute "for tests of strength between contending forces," John Wiley & Sons v. Livingston, 376 U.S. 543, 549 (1964), can be effective only if a union maintains its duty of fair representation. 101. United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 73 (1981) (Stevens, J., concurring in part, dissenting in part). 102. See supra note 47. 103. See, e.g., Hawaii Rev. Stat. § 658-9 (1976) ("[T]he court may make an order vacating the award, upon the application of any party to the arbitration."); N.H. Rev. Stat. Ann. § 542:8 (1974) ("At any time within one year after the award is made any party to the arbitration may apply. . . for an order. . . vacating the award."). 104. United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 73 & n.3 (1981) (Stevens, J., concurring in part, dissenting in part). The Supreme Court, in Bowen v. United States Postal Serv., 103 S. Ct. 588 (1983), confirmed this by holding the union liable only for damages accruing after an arbitration decision. Id. at 595-96. See supra note 41 and accompanying text. Failure to process a meritorious grievance through arbitration may also be a breach of the duty of fair representation although an employee does not have "an absolute right to have his grievance taken to arbitration." Vaca v. Sipes, 386 U.S. 171, 191 (1967); see, e.g., Freeman v. O'Neal Steel, Inc., 609 F.2d 1123, 1127 (5th Cir.), cert. denied, 449 U.S. 833 (1980); Milstead v. International Bhd. of Teamsters, Local Union No. 957, 580 F.2d 232, 235 (6th Cir. 1978); Ruzicka

19831

FORDHAM LAW REVIEW

acts as the employee's exclusive representative. 0 5 To pursue the claim against his union, the employee must obtain independent counsel that was probably not involved in the previous action. 06 Obviously, the purposes of statutes of limitations in general 1 0 7 are not served by applying such a short period to the breach of duty claim. Rather than barring only stale claims, the vacation of arbitration awards statute is likely to bar meritorious claims. Furthermore, because three months may be an insufficient time to

evaluate the merits of a duty of fair representation claim, plaintiffs may file actions prematurely to be certain that their potentially valid claims are preserved. 08 If the time limitations period is longer, the number of unmeritorious claims that are filed may be reduced. 0 9

c. Malpractice and other tort statutes of limitations In Mitchell, Justice Stevens suggested that the appropriate period governing a fair representation claim is a malpractice statute of limitations. 11 0 He analogized the union that breaches its duty to a "lawyer who negligently allows the statute of limitations to run on his client's valid claim [and] may be liable to his client even though the original defendant no longer has any exposure.""' But this analogy is not appropriate. A union is not liable if an employee can no longer recover against his employer. 112 When the statute of limitations has run on the claim against the employer, damages are lost and are not recoverable from the union. "3

v. General Motors Corp., 523 F.2d 306, 310 (6th Cir. 1975); Pesola v. Inland Tool & Mfg., 423 F. Supp. 30, 35 (E.D. Mich. 1976). 105. See supra note 28. 106. Fox v. Mitchell Transp. Inc., 506 F. Supp. 1346, 1350 (D. Md.), afj'd mem., 671 F.2d 498 (4th Cir. 1981); see C. Summers & R. Rabin, The Rights of Union Members 131 (1979). It is not uncommon for no record to be kept of the hearing, C. Updegraff, supra note 95, at 259, thus making it more difficult for independent counsel to assist the employee in preparing a case against the union. 107. See supra notes 49-51 and accompanying text. 108. Fox v. Mitchell Transp. Inc., 506 F. Supp. 1346, 1350 (D. Md.), aff'd mem., 671 F.2d 498 (4th Cir. 1981). 109. Very few plaintiffs have been able to sustain the burden of proof necessary for a breach of duty claim. See Sachs & Gurewitz, supra note 1, at 526. The necessity of defending meritless claims depletes a union's treasury, thereby detracting from its ability to represent its employees adequately. See Speech by John S. Irving, General Counsel to NLRB, concerning the Duty of Fair Representation (Apr. 27, 1979), reprinted in 1979 Lab. Rel. Y.B. 345, 346. 110. 451 U.S. at 74 (Stevens, J., concurring in part, dissenting in part). 111. Id. (Stevens, J., concurring in part, dissenting in part). 112. See supra note 42 and accompanying text. 113. Id. In Harrison v. United Transp. Union, 530 F.2d 558 (4th Cir. 1975), cert. denied, 425 U.S. 958 (1976), a case arising under the Railway Labor Act, the court held that the union was liable because it had allowed the statute of limitations to run on the employees valid claim. Id. at 561-62. The case is distinguishable, however,

[Vol. 51

LABOR STATUTE OF LIMITATIONS

In addition, the relationship between a union and an employee is not analogous to an attorney-client relationship. Rank and file employees who volunteer their time to serve as union stewards cannot

realistically be expected to meet the exacting standards of a fiduciary. " 4 Furthermore, an analogy to a malpractice statute suggests that the duty of fair representation may be breached by ordinary negligence, when actually something greater, perhaps gross negligence, is needed."15 Moreover, not only do limitations periods for malpractice vary among states, but in some states uncertainty exists as to which statute of limitations applies to a malpractice claim; "1 uniformity is frustrated again.

because the employee could have presented his grievance to the Railroad Adjustment Board on his own had the union timely informed him that it was dropping his claim. Id. 114. Curtis v. United Transp. Union, Nos. 82-1450, 82-1458, slip op. at 2 (8th Cir. Feb. 22, 1983); Findley v. Jones Motor Freight Corp., 639 F.2d 953, 958 (3d Cir. 1981); Freeman v. O'Neal Steel, Inc., 609 F.2d 1123, 1127 (5th Cir.), cert. denied, 449 U.S. 833 (1980); Vladeck, The Conflict between the Duty of Fair Representation and the Limitations on Union Self-Government, in The Duty of Fair Representation 45 (J. McKelvey ed. 1977); Irving, NLRB Policy on Union's Duty of Fair Representation, 1979 Lab. Rel. Y.B. 341, 342-43; Sachs & Gurewitz, supra note 1, at 528-29. Although the fiduciary "label should not necessarily control the legal relationships of the parties," Abrams v. Carrier Corp., 434 F.2d 1234, 1252 (2d Cir. 1970), cert. denied, 401 U.S. 1009 (1971), to some extent labels may become self fulfilling, L. Krasner & L. Ullman, Behavior Influence and Personality 4-5 (1973). 115. The standard of care required by the duty of fair representation is uncertain. Sachs & Gurewitz, supra note 1, at 528. See generally Summers, The Individual Employee's Rights Under the Collective Agreement: What Constitutes Fair Representation?, in The Duty of Fair Representation 60 (J. McKelvey ed. 1977). An employee must prove more than negligence to show a breach of the duty of fair representation. See, e.g., NLRB v. American Postal Workers Union, 618 F.2d 1249, 1255 (8th Cir. 1980); Dente v. International Org. of Masters, Local 90, 492 F.2d 10, 12 (9th Cir. 1973), cert. denied, 417 U.S. 910 (1974); Griffin v. UAW, 469 F.2d 181, 183 (4th Cir. 1972); Jackson v. Trans World Airlines, 457 F.2d 202, 204 (2d Cir. 1972); Hiatt v. New York Cent. R.R., 444 F.2d 1397, 1398 (7th Cir. 1971); Bazarte v. United Transp. Union, 429 F.2d 868, 872 (3d Cir. 1970); Larry v. Penn Truck Aids, Inc., 94 F.R.D. 708, 717 (E.D. Pa. 1982). A showing of mere negligence is not enough to prove a breach of duty before the NLRB. General Truck Drivers Union, Local 692, 209 N.L.R.B. 446, 448 (1974). Some courts have found, however, that negligent conduct in handling an employee's grievance may be equivalent to arbitrary or perfunctory conduct, which is a breach of duty. E.g., Ruzicka v. General Motors Corp., 523 F.2d 306, 310 (6th Cir. 1975); Pesola v. Inland Tool & Mfg., 423 F. Supp. 30, 35 (E.D. Mich. 1976); see Milstead v. International Bhd. of Teamsters, Local Union No. 957, 580 F.2d 232, 235 (6th Cir. 1978). Other courts have held that an

employee must show gross negligence, bad faith or intentional misconduct by his union. E.g., Hoffman v. Lonza, Inc., 658 F.2d 519, 520 (7th Cir. 1981) (intentional misconduct); Whitten v. Anchor Motor Freight, 521 F.2d 1335, 1340-41 (6th Cir. 1975) (bad faith), cert. denied, 425 U.S. 981 (1976); Barhitte v. Kroger Co., 99 L.R.R.M. (BNA) 2663, 2667 (W.D. Mich. 1978) (gross negligence). 116. See, e.g., Yazzle v. Olney, Levy, Kaplan & Tenner, P.C., 593 F.2d 100, 10205 (9th Cir. 1979); Harrison v. Casto, 271 S.E.2d 774, 776 (W. Va. 1980); Goodstein

1983] 913

FORDHAM LAW REVIEW

Adopting other tort statutes revives the difficulty of characterizing the breach of duty claim.11 7 It has been variously characterized as an action for lost wages,"" a miscellaneous tort action with a catchall limitations period, " 9 and a liability imposed by statute. 20 These characterizations create wide discrepancies in the duration of the limitations period.121 Furthermore, many tort statutes are three years or greater in length, 22 Co-workers have a strong interest in the swift resolution of actions against their union so that they can gauge the effectiveness of their collective bargaining representative. 1 2 3 Consequently, permitting a limitation period of three years or longer would serve to frustrate the national policy in favor of labor stability.124

E. Adopting an Analogous Federal Statute

When federal rights are created without limitations periods, the fifth alternative a court may select is to borrow an analogous federal statute of limitations. A federal cause of action analogous to the

v. Weinberg, 219 Va. 105, 110, 245 S.E.2d 140, 143 (1978). See generally Note, Choice of Statute of Limitations in Attorney Malpractice Cases, 1976 Ariz. St. L.J. 613. 117. See Tuma v. American Can Co., 367 F. Supp. 1178, 1183-84 (D.N.J. 1973); T. Boyce, supra note 1, at 91; R. Gorman, supra note 2, at 725. 118. Lake v. Martin Marietta Corp., 538 F. Supp. 725, 728-29 (M.D. Fla. 1982). 119. E.g., Gallagher v. Chrysler Corp., 613 F.2d 167, 168-69 (6th Cir.), cert. denied, 449 U.S. 841 (1980); Howard v. Aluminum Workers Int'l Union, 589 F.2d 771, 774 (4th Cir. 1978); Sanderson v. Ford Motor Co., 483 F.2d 102, 114 (5th Cir. 1973). 120. E.g., Newton v. Local 801 Frigidaire Local of the Int'l Union of Elec. Workers, 684 F.2d 401, 403 (6th Cir. 1982); Heritage v. Board of Educ., 447 F. Supp. 1240, 1243-44 (D. Del. 1978); Canada v. United Parcel Serv., Inc. 446 F. Supp. 1048, 1052 (N.D. Ill. 1978). 121. Compare Newton v. Local 801 Frigidaire Local of the Int'l Union of Elec. Workers, 684 F.2d 401, 403 (6th Cir. 1982) (Ohio six-year liability created by statute) with Gallagher v. Chrysler Corp., 613 F.2d 167, 168 (6th Cir.) (Michigan three-year catchall limitation), cert. denied, 449 U.S. 841 (1980) with Lake v.

Martin Marietta Corp., 538 F. Supp. 725, 729 (M.D. Fla. 1982) (Florida two-year action to recover lost wages). 122. E.g., Fla. Stat. Ann. § 95.11(3)(o) (West 1982) (four years); Mich. Comp. Laws Ann. § 600.5805(8) (Supp. 1982) (three years); N.H. Rev. Stat. Ann. § 508:4 (Supp. 1981) (six years); Wash. Rev. Code Ann. § 4.16.080(2) (1962) (three years). 123. Because the existence of a collective bargaining agreement may bar the certification of a new union or the decertification of the existing union for up to three years, R. Gorman, supra note 2, at 54, employees have an interest in knowing the results of a duty of fair representation suit as soon as possible. 124. The contract bar rule was designed to provide stability in bargaining relationships. See id. The Board, however, may decertify a union or waive the contract bar rule when the union has breached its duty of fair representation. Independent Metal Workers Union, Local 1, 147 N.L.R.B. 1573, 1577-78 (1964).

[Vol. 51

LABOR STATUTE OF LIMITATIONS

breach of the duty of fair representation is an unfair labor practice. Under section 10(b) of the NLRA,125 a party must file such charges within six months of the occurrence of the act. 20 The NLRB considers a breach of the duty of fair representation to be an unfair labor practice. 27 Thus, when the claim is brought in that forum, the section 10(b) limitation applies. Although section 10(b) was not drafted with the duty of fair representation in mind, 1 2 8 the period is nevertheless indicative of congressional attitudes toward labor dispute resolution. As Justice Stewart noted in Mitchell, "[tihe time limitation reflects the balance drawn by Congress . . . between the interests of employees in redressing grievances and 'vindicati[ng] [their] statutory rights,' " and the goal of labor stability which the NLRA was designed to promote. 2 9 Accordingly, Justice Stewart suggested "the adoption of § 10(b) of the NLRA as the appropriate limitations period" for hybrid section 301-breach of duty actions.13 Subsequently, several courts have used that limitations period for breach of duty suits. 131 Adoption of the section 10(b) limitation for breach of duty suits would provide national uniformity. Parties to a multi-state agreement would be certain that the duration of their exposure in each state would be the same.132 The certainty would increase a union's financial stability, allowing it to serve its members more effectively in further

125. 29 U.S.C. § 160(b) (1976). 126. Id. 127. Miranda Fuel Co., 140 N.L.R.B. 181, 185 (1962), enforcement denied, 326 F.2d 172 (2d Cir. 1963). The Supreme Court has yet to decide whether every breach of the duty of fair representation is an unfair labor practice. United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 67 n.3 (1981) (Stewart, J., concurring). 128. Section 10(b) was enacted in 1947. Labor

Management Relations Act, Pub. L. No. 80-101, § 102, 61 Stat. 136, 146. The duty of fair representation was not held applicable to the NLRA until 1953 in Ford Motor Co. v. Huffman, 345 U.S. 330, 337 (1953). United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 76 n.9 (1981) (Stevens, J., concurring in part, dissenting in part). 129. United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 68-69 (1981) (Stewart, J., concurring) (citations omitted); accord Assad v. Mount Sinai Hosp., No. 82-7251, slip op. at 2290 (2d Cir. Mar. 9, 1983). 130. 451 U.S. at 71 (Stewart, J., concurring). It is noteworthy that the majority in Mitchell did not reject the § 10(b) limitation, it merely "decline[d] to consider [the] argument since it was not raised by either of the parties." Id. at 60 n.2. Justice Blackmun also issued a concurring opinion, in which he stated that he found Justice Stewart's analysis persuasive but "resolution of the § 10(b) question properly should await the development of a full adversarial record." Id. at 65 (Blackmun, J., concurring). 131. E.g., Badon v. General Motors Corp., 679 F.2d 93, 99-100 (6th Cir. 1982); Weller v. G.M.W. (Glendenning Motorways, Inc.), 548 F. Supp. 560, 562 (N.D. Ill. 1982); Zahnow v. Great Lakes Distrib. Co., 544 F. Supp. 553, 557-58 (E.D. Mich. 1982); Lewis v. Harbison-Walker Refractories, 542 F. Supp. 1381, 1383-84 (N.D. Ind. 1982); Jarnigan v. Teamsters Local 519, 548 F. Supp. 25, 27 (E.D. Tenn. 1982); Bates v. American Tara Corp., 111 L.R.R.M. (BNA) 2149, 1252 (N.D. Ga. 1981). 132. See supra notes 82-83 and accompanying text.

1983] 915

916 FORDHAM LAW REVIEW [Vol. 51

ance of national labor objectives, 133 and employees in each state would have equal time to vindicate their federal rights. Moreover, because the section 10(b) limitation applies to most labor disputes that arise in the industrial setting,1 3 4 unions and employees alike are more apt to have been exposed to it than other statutes of limitations. This may decrease the likelihood that an employee will inadvertently wait beyond the six-month period before seeking advice or that a union will accidentally dispose of evidence necessary for its defense before the six-month period has expired. Applying the section 10(b) limitation to a breach of duty of fair representation suit in federal court has been met with the criticism that Congress structured the limitation in light of the special considerations applicable to unfair labor practice claims filed with the NLRB. 135 As one court has stated, the "time bar must be viewed in light of the unique mandate and functions of the Board [which has] the responsibility of preventing unfair labor practices. . . . The § 10(b) time bar was enacted to ensure that the Board's jurisdiction could be exercised before those disputes became stale." 130 The premise of this criticism is that the NLRB handles many cases that require rapid resolution because they involve instances in which production has

ceased, such as a strike or boycott. 137 These disputes may be continual; therefore, immediate intervention is desirable. 38 Yet, cer

133. When a union knows the limitations period has expired, it can divert resources that were set aside for its defen2eto use for employees. Moreover, the union will not be required to litigate the issue of the appropriate limitations period. Financial stability is important because without it a union's performance as collective bargaining representative may be hindered. See Bowen v. United States Postal Serv., 103 S. Ct. 588, 602 (1983) (White, J., concurring in part, dissenting in part) (backpay should not be charged to a union because "limited union funds" need protection); International Bhd. of Elec. Workers v. Foust, 442 U.S. 42, 48 (1979) (punitive damages should not be awarded for breach of the duty of fair representation because they could "impair the financial stability of unions and unsettle the careful balance of individual and collective interests"); Irving, supra note 114, at 342 (damage awards can have a severe impact on the viablility of unions). 134. The § 10(b) limitation is applicable to all unfair labor practice claims brought before the NLRB. 29 U.S.C. § 160(b) (1976). When an event is arguably an unfair labor practice in violation of § 8 of the NLRA, "the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board." San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 245 (1959). 135. Edwards v. Sea-Land Serv., Inc., 678 F.2d 1276, 1292 (5th Cir. 1982); Flowers v. Local 2602 of the United Steel Workers, 671 F.2d 87, 90 (2d Cir.), cert. granted, 103 S. Ct. 442 (1982); Suwanchai v. International Bhd. of Elec. Workers, Local 1973, 528 F. Supp. 851, 859 (D.N.H. 1981). 136. Suwanchai v. International Bhd. of Elec. Workers, Local 1973, 528 F. Supp. 851, 859 (D.N.H. 1981) (emphasis in original). 137. See id. 138. One district court has therefore rejected the § 10(b) limitation because "[a] duty of fair representation suit. . . presents an entirely different situation . . . .The alleged wrong is over and done with; the dispute is not on-going." Id.

LABOR STATUTE OF LIMITATIONS

tain unfair labor practices to which the section 10(b) limitation is equally applicable, such as a prohibition of employee solicitation of union support during nonworking time in nonworking areas, do not disrupt production. 39 Clearly, the need for rapid resolution by the NLRB is not as great in such a situation. 140 Just as the section 10(b) limitation applies when a breach of duty claim is brought before the NLRB,14 1 so should it in a federal or state court. The procedural differences between the NLRB and a federal or state court do not warrant abandonment of the policies underlying section 10(b) when the claim is not brought before the NLRB.1 4 2 As the Supreme Court has noted, section 10(b) was designed to "bar litigation over past events 'after records have been destroyed, witnesses have gone

elsewhere, and recollections of the events in question have become dim and confused,' . . . and of course to stabilize existing bargaining relationships."1 43 These purposes are not unique to a particular forum. Moreover, although all statutes of limitations are designed to bar stale claims, only the section 10(b) limitation was also designed to promote labor stability. Additionally, by enacting section 10(b) Congress sought to limit the amount of backpay awarded. 144 Allowing employees in federal court a substantially longer period to bring breach of the duty of fair representation claims than employees

139. Restrictions on employee communication may violate § 8(a)(1) of the NLRA. See Beth Israel Hosp. v. NLRB, 437 U.S. 483, 492-93 (1978). 140. Certain cases are given priority by the NLRA, and are set forth in § 10(1)(m). 29 U.S.C. § 160(1)-(m) (1976). Section 10(l) gives priority to cases involving illegal strikes, secondary boycotts and picketing, and § 10(m) gives priority to cases of discrimination against employees designed to encourage or discourage unionism. Id. An important criterion the NLRB considers in giving priority to a particular case is the need for an injunction. See National Labor Relations Board Casehandling Manual, Unfair Labor Practice Proceedings 11,740-40.1 (1975). 141. Koppers Co., 163 N.L.R.B. 517, 517 (1967). 142. See Badon v. General Motors Corp., 679 F.2d 93, 99 (6th Cir. 1982); International Union of Operating Eng'rs v. Fischbach & Moore, Inc., 350 F.2d 936, 937-38 (9th Cir. 1965), cert. denied, 384 U.S. 904 (1966). The major distinction between the two forums for the breach of duty lies in the scope of jurisdiction and the remedial power. T. Boyce, supra note 1, at 83-85; see R. Gorman, supra note 2, at 721-28. The NLRB does not have jurisdiction over an employer unless his breach of contract is also an unfair labor practice; see Allied Chem. & Alkali Workers, Local Union No. 1 v. Pittsburgh Plate Glass Co., 404 U.S. 157, 186-88 (1971); therefore, an employee might not receive full relief. The NLRB's damage award is also limited to backpay, whereas courts may award consequential damages. T. Boyce, supra note 1, at 83. When the breach of duty claim is brought before the NLRB, however, the case is prosecuted by the NLRB's general counsel, and the employee has no litigation expenses. Id. at 84. 143. Local 1424, Int'l Ass'n of Machinists v. NLRB, 362 U.S. 411, 419 (1960) (citations omitted). 144. H.R. Conf. Rep't. No. 510, H.R. Rep. No. 3020, 80th Cong., 1st Sess. 53 (1947), reprinted in 1 NLRB, Legislative History of the Labor Management Relations Act, 1947, at 505, 557 (1948).

1983]

FORDHAM LAW REVIEW

before the NLRB may undermine this congressional purpose by increasing the amount of backpay for which the union is liable. The right of an employee to be fairly represented by his union is derived from

Memorandum of Point and Authorities

the policy of the NLRA.145 The time bar in section 10(b) of the NLRA was intended to limit the rights provided by the Act.14 Because, as the Supreme Court has noted, "it is the entire Act, and not merely one portion of it, which embodies 'the definitive statement of national policy,' "147 the section 10(b) limitation is particularly appropriate for breach of duty suits. The six-month period would allow plaintiffs adequate time to assess the merits of their claims 148 and provide defendants repose within a reasonable period while helping to decrease the case load in federal courts.149 Its application would obviate the need for borrowing state limitations periods and avoid the problems involved with inconsistent characterization of the claim. 50 Its brevity, uniformity and certainty counsel its consideration when federal courts borrow a limitations period for breach of duty suits.

39. Because of the breaches of collective bargaining agreement alleged herein, Plaintiffs have lost future wages and benefits which they would have been entitled, pension benefits and retirement benefits.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for judgment in their favor and against Defendants as follows:

(a) *Against the Local 18:* for a declaration that the Local 18 breached its duty of fair representation and an award against the Local 18 of such damages, including costs, attorney's fees and expenses and emotional distress and suffering, caused by that breach of duty, as alleged more specifically hereinabove;

(b) *Against DWP :* For fraud and allowing false evidence and refusing a fair hearing. including costs, attorney's fees and expenses and emotional distress and suffering, caused by that breach of duty, as alleged more specifically hereinabove;

(c) For compensatory damages for in an amount according to proof, yet to be determined;

(d) For an award of Plaintiffs' costs of suit;

(e) Awarding Plaintiffs' back pay, interest on back pay, post judgment interest and other lost employment benefits in an amount to be later determined;

(f) For prejudgment and post judgment interest on all sums awarded; and

(g) For such other and further relief as this Court may deem just and proper.

(h) For Punitive damages

### JURY DEMAND

Plaintiff hereby demands trial by jury as to all causes of action that may properly be tried to a jury.

Roderick Motley

Complaint- RODERICK MOTLEY